**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| SAMUEL BOWMAN | CIVIL ACTION |
| --- | --- |
| v. | NO. 14-3182 |
| WAL-MART STORES EAST, LP | |

Baylson, J.                                                                                                                    February 10, 2015

**MEMORANDUM RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SANCTIONS**

In this premises-liability negligence action, Defendant Wal-Mart Stores East, LP ("Wal-Mart") moves for summary judgment on Plaintiff Samuel Bowman's personal injury claims allegedly sustained when Bowman slipped and fell on egg yolk on the floor of a Wal-Mart Store in Philadelphia. Wal-Mart contends that video footage from a store security camera, which it has produced, shows that the egg was on the floor for approximately four minutes before Bowman fell, and the spill occurred because of the actions of a customer, not Wal-Mart.

Because there is no evidence Wal-Mart had actual notice of the spill, Bowman concedes that this case turns on whether there is sufficient evidence to show Wal-Mart had constructive notice of the spill. Because the spill was present for approximately four minutes, during which time the spill was obscured for a significant portion of that period by customers and carts, Bowman's evidence is insufficient to show that Wal-Mart had constructive notice. Accordingly, Bowman cannot make out his negligence claim as a matter of law, and Wal-Mart's summary judgment motion will be granted.

Wal-Mart has also filed a motion for sanctions against Bowman and his counsel, arguing that Bowman took specific notice of the spill and deliberately fell (ECF 19). Because the security

1

camera video footage does not conclusively establish that Bowman had notice of the spill and intentionally fell, Wal-Mart's motion for sanctions will be denied.

### I. Factual and Procedural Background

On October 26, 2013, Bowman alleges he was injured when he slipped and fell on egg yolk on the floor of Wal-Mart Store #5103, located at 4600 Roosevelt Boulevard, Building G, in Philadelphia. Bowman alleges he suffered severe back injuries as a result of his fall. At his deposition, Bowman testified that he went to the Wal-Mart store with his brother and had been in the store between two and four minutes before the incident. See ECF 14, Ex. B, Bowman Dep. 32:9-12, Oct. 27, 2014. Bowman testified that he entered the store walking behind his brother and had been in the store only a few minutes before turning back to retrieve money from his car. Id. 32:21-33:7; 38:17-20. Bowman crossed through the area of the spill before the incident occurred and before attempting to return to his car. Id. 34:12-18. Bowman testified that at no point prior to his fall did he observe anything on the floor, and he did not know what had caused his fall. Id. 38:21-25; 48:21-23; 49:15-22. He also testified that he has poor vision. See ECF 17, Ex. C, Bowman Dep. 25:22-24, Oct. 27, 2014.

Wal-Mart has produced a DVD recording of footage from a store security camera and still shots from the recording showing the area of the incident before, during, and after Bowman's fall. See ECF 14, Ex. C and D. The video shows the following timeline:

5:12:30 p.m. – Video begins.

6:06:15 p.m. – Nothing is on the floor in the area of the incident.

6:10:33 p.m. – A customer removes an egg carton from her shopping cart in the area of the incident. Numerous customers and carts are in the area of the incident at the time, so the video does not show an egg breaking or egg debris falling onto the floor.

6:11:18 p.m. – What appears to be egg yolk appears on the ground in the video for a brief moment, although the area is still largely covered by customers and carts. The video does not show any identifiable Wal-Mart associates or other Wal-Mart staff members walking through the area from the time the spill appears until the incident occurs.  The video does show that the area of the spill is in close proximity to the store cash registers, although the view appears to be partially obscured by a product display.

6:13:40 – 6:13:43 p.m. – The video shows Bowman and his brother traversing the area of the spill.   Bowman's brother walks through the spill and nothing happens. Bowman appears to pause and look at the egg yolk, and then he walks around the spill.

6:14:17 – 6:14:19 p.m. – Bowman, walking alone, approaches the area of the spill from the other direction.  Bowman walks into the spill, brings his feet together, and falls to the ground.

6:14:39 p.m. – Bowman remains on the ground, and a Wal-Mart employee comes to his assistance.

Wal-Mart Shift Manager Christopher Rodgers testified at his deposition that all Wal-Mart associates and managers perform regular safety walks through the store throughout the day and address any situations or spills they observe during those walks.  See ECF 14, Ex. E, Rodgers Dep. 16:22-17:6, 17:22-18:11, Oct. 27, 2014.

On June 4, 2014, Bowman filed his Complaint against Wal-Mart, properly asserting that this Court has diversity jurisdiction under 28 U.S.C. § 1332.  On October 14, 2014, the Court referred the case to arbitration (ECF 12).   On November 18, 2014, Wal-Mart moved for summary judgment, arguing that Bowman is unable to allege a viable theory of negligence and contending that Bowman took notice of the egg yolk before stepping into it (ECF 14).   On December 2, 2014, Bowman filed his response, contending he did not have notice of the egg yolk or stage the accident as Wal-Mart suggested and arguing that Wal-Mart had constructive notice of the spill (ECF 17). Wal-Mart filed a reply on December 9, 2014 (ECF 18).

On January 6, 2015, Wal-Mart moved for sanctions under Fed. R. Civ. P. 11 against

3

Bowman and his counsel, contending Bowman's claim is fraudulent (ECF 19). Wal-Mart argues that the store security camera video shows that Bowman took specific notice of the spill before returning to the area and deliberately falling. Bowman filed a response on February 2, 2015, contending that the security camera video footage does not necessarily support Wal-Mart's interpretation and that Bowman testified at his deposition that he did not see the substance on the floor before his fall (ECF 23). Wal-Mart replied on February 2, 2015, arguing that there is only one reasonable interpretation of the video footage (ECF 24).

On February 2, 2015, the Court held oral argument on Wal-Mart's motion for summary judgment. During argument, Bowman's counsel noted that the strongest evidence Wal-Mart had constructive notice of the spill was the proximity of the cash registers to the area of the incident. Wal-Mart's counsel contended that the video footage showed that Bowman took notice of the spill and knowingly stepped into it.

## II. Analysis

### A. Summary Judgment Standard

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

## B.  Viability of Bowman's Negligence Claim

Under Pennsylvania law, the basic elements of a negligence cause of action are (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.  Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005).  Establishing that the defendant breached a legal duty is a condition precedent to proving negligence.  Shaw v. Kirschbaum, 653 A.2d 12, 15 (Pa. Super. Ct. 1994).

Pennsylvania courts have adopted the Restatement (Second) of Torts approach to determining the duty owed by a possessor of land to a person on his land.  See Kirschbaum v. WRGSP Assocs., 243 F.3d 145, 152 (3d Cir. 2001) (citing Carrender v. Fitterer, 469 A.2d 120,

5

123 (Pa. 1983)).[1]  Under this approach, "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." Carrender, 469 A.2d at 123.  There is no dispute that Bowman was an invitee.

"Possessors of land owe a duty to protect invitees from foreseeable harm." Id.  "[A] possessor of land is not an insurer of the safety of those on his premises," so that "the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence." Moultrey v. Great Atl. & Pac. Tea Co., 422 A.2d 593, 595-96 (Pa. Super. Ct. 1980) (citations omitted).  The Restatement (Second) of Torts provides that a duty is owed only when a possessor of land "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees." See Restatement (Second) of Torts § 343 (1965).

"The threshold of establishing a breach of duty is notice." Kujawski v. Wal-Mart Stores, Inc., No. 06-4120, 2007 WL 2791838, at *3 (E.D. Pa. Sept. 25, 2007).  To establish notice, an "invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." Estate of Swift v. Ne. Hosp. of Phila., 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (citing Moultrey, 422 A.2d at 598).

It is undisputed that Wal-Mart did not create the spill and that Wal-Mart did not have actual notice of the spill.  See ECF 17, Pl.'s Response Br. at 5 ("Although Defendant may not have had actual notice of the egg yolk on the floor of its premises, notice may and should be imputed to

---

[1] Last year, the Pennsylvania Supreme Court refused to adopt the Restatement (Third) of Torts formulation of the strict products liability cause of action in favor of maintaining the Restatement (Second) of Torts approach.  See Tincher v. Omega Flex, Inc., 104 A.3d 328, 399 (Pa. 2014).  This decision belied the Third Circuit's prediction that the Pennsylvania Supreme Court would adopt the Restatement (Third).  See Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 40 (3d Cir. 2009).

6

Defendant on the basis of constructive notice."). Nor can Bowman proceed under a theory of *res ipsa loquitor*, since Pennsylvania courts have consistently held that "when a patron suffers an injury in a store from a transitory danger, *res ipsa loquitor* does not apply." See, e.g., Neve v. Insalaco's, 771 A.2d 786, 789-90 (Pa. Super. Ct. 2001) (noting that "*res ipsa loquitor* does not apply to prove the negligence of shopkeepers in slip and fall debris cases . . . because shopkeepers cannot be charged with notice of transitory dangers that can materialize a split second before an injury occurs" (citing Moultrey, 422 A.2d at 596)).

Accordingly, Bowman proceeds only under a constructive notice theory, as his counsel confirmed at oral argument. "Constructive notice requires proof that the condition had been present long enough that, in the exercise of reasonable care, the defendant should have known of its presence." Cox v. Wal-Mart Stores East, L.P., No. 07-2391, 2008 WL 4072804, at *4 (E.D. Pa. Aug. 26, 2008) (citing Martino v. Great Atl. & Pac. Tea Co., 213 A.2d 608, 610-11 (Pa. 1965)). Constructive notice depends on the circumstances of each case. Schwartz v. Warwick-Phila. Corp., 226 A.2d 484, 487 (Pa. 1967). Courts consider a variety of factors to determine constructive notice, including "the number of persons using the premises, the frequency of such use, the nature of the defect, its location on the premises, its probable cause, and the opportunity which defendant, as a reasonably prudent person, had to remedy it." Felix v. GMS, Zallie Holdings, Inc., 827 F. Supp. 2d 430, 437 (E.D. Pa. 2011) (quoting Hagan v. Caldor Dep't Stores, Inc., No. 89-7810, 1991 WL 8429, at *4 (E.D. Pa. Jan. 28, 1991)).

The duration of the hazard is one of the most important factors "because if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even 'by the exercise of reasonable care,' would not discover the hazard, and thus would owe no

duty to protect invitees form such a hazard." Id. (quoting Restatement (Second) of Torts § 343). There is no absolute threshold duration under Pennsylvania law for constructive notice. See Branch v. Phila. Trans. Co., 96 A.2d 860, 862 (Pa. 1953) ("There could conceivably be a situation where 5 minutes would be adequate notice and where 5 hours would be inadequate notice."). Although the evaluation of the constructive notice factors is normally a jury question, "where the evidence adduced requires the jury to resort to 'conjecture, guess or suspicion,' the determination must be made by the Court." Felix, 827 F. Supp. 2d at 437 (quoting Lanni v. Pa. R.R. Co., 88 A.2d 887, 889 (Pa. 1952)). Accordingly, courts applying Pennsylvania law "have consistently required a plaintiff to provide some proof as to the length of time a spill existed on the floor to establish constructive notice." Kujawski, 2007 WL 2791838, at *4 (citations omitted).

In contrast to many of the cases granting summary judgment on slip-and-fall premises liability claims, the Court has evidence of the duration of the spill—the video from the Wal-Mart store security camera. The video shows that the spill existed for approximately four minutes before Bowman slipped on the egg yolk. Accordingly, this case can be distinguished from cases like Kujawski and Cox, in which the record evidence was insufficient to show the duration of the spill.

The approximately four-minute period between the spill and Bowman's fall is a short duration from which to find constructive notice for a hazard not caused by Wal-Mart. See Parker v. McCrory Stores Corp., 101 A.2d 377, 378 (Pa. 1954) ("No Court has ever held that five minutes is sufficient constructive notice of a dangerous condition; to so hold would be to make the defendant an insurer."). Cases in which courts have found constructive notice have generally involved direct or circumstantial evidence that the hazard was present for a period substantially

longer than four minutes.  In David by Berkeley v. Pueblo Supermarket of St. Thomas, 740 F.2d 230, 236 (3d Cir. 1984), a case applying Virgin Islands law, which also uses the Restatement (Second) of Torts, constructive notice was shown though a witness statement that the spill had been on the supermarket floor for up to two hours before the incident.  In Katz v. John Wanamaker Philadelphia, Inc., 112 A.2d 65, 66 (Pa. 1955), constructive notice was shown through a witness statement that the stairs on which plaintiff slipped were wet and muddy "for about an hour."  In Ryan v. Super Fresh Food Markets, Inc., No. 99-1047, 2000 WL 537402, at *2-3 (E.D. Pa. Apr. 26, 2000), constructive notice was established by plaintiff's testimony that she neither saw nor heard a spill during her 15-minute conversation in a supermarket aisle prior to her fall in the same aisle, resulting in an inference that the spill had been on the floor for at least 15 minutes before plaintiff's fall.  The undisputed evidence in this case shows that the spill was on the floor of the Wal-Mart for a much shorter period of time.

In addition to the duration of the spill, the Court must consider other factors outlined in Felix.  In terms of the number of persons using the premises and the frequency of such use, the video shows numerous customers and carts in the area of the spill during a substantial portion of the approximately four-minute duration between the spill and Bowman's fall.  It appears from the video that these customers and carts at least partially obstructed the view of the spill during a significant portion of that period.

With regard to the nature of the defect, its location, its probable cause, and Wal-Mart's opportunity to remedy the defect, the video demonstrates that the yellow substance on the floor was most likely a broken egg dropped by a customer.  The spill did not occur in the grocery aisle, however, but toward the front of the store by the cash registers.  Bowman argues this proximity to

9

the cash registers means that Wal-Mart employees should have discovered the spill more quickly. However, the spill did not occur in the grocery aisle, where Wal-Mart reasonably could have expected that such spills were more likely to occur. Moreover, the view from the cash registers appears to have been at least partially obscured by customers, carts, and a product display. In addition, Bowman has produced no evidence to contradict the deposition testimony of Wal-Mart Manager Rodgers, who testified that employees conduct regular walk-throughs of the store during which they address situations such as spills.

Considering all of these factors, the Court concludes that Wal-Mart did not have constructive notice of the spill, which was on the floor for approximately four minutes and was partially obscured by customers, carts, and a product display.

## C.  Wal-Mart's Claim Bowman Had Notice of the Spill and Deliberately Fell

Wal-Mart contends the security camera video footage shows that Bowman took notice of the spill before the incident and deliberately fell. Because the Court concludes that Bowman has not produced sufficient evidence to show that Wal-Mart had constructive notice of the spill before Bowman's fall, the Court need not consider this claim in ruling on the summary judgment motion. However, Wal-Mart's allegations are relevant to its motion for sanctions against Bowman and his counsel.

The video footage does show that Bowman traversed the area of the spill before his fall, but it does not conclusively establish that Bowman had notice of the spill, that his fall was intentional, or that he staged the incident. Wal-Mart's interpretation of the video footage is not the only reasonable one, as Bowman argues. Moreover, Bowman testified at his deposition that he did not see the substance on the floor when he entered the store and that he has poor vision, so there is

evidence in the record contradicting Wal-Mart's allegations. See ECF 17, Ex. C, Bowman Dep. 25:22-24; 51:8-13, Oct. 27, 2014.

Because the video footage is disputed and does not conclusively establish that Bowman took notice of the spill, deliberately fell, and that his claim is fraudulent, the Court will deny Wal-Mart's motion for sanctions.

### III. Conclusion

Because Bowman has failed to come forward with evidence showing that Wal-Mart had constructive notice of the spill, Wal-Mart's motion for summary judgment will be granted. However, because the video does not conclusively establish that Bowman deliberately fell or that his claim is fraudulent, Wal-Mart's motion for sanctions will be denied.

An appropriate Order follows.

O:\CIVIL 14\14-3182 bowman v. wal-mart\14cv3182 Memo re MSJ.docx